**BARRETT et al., Appellants,**

v.

**WACO INTERNATIONAL, INC. et al., Appellees.**

[Cite as *Barrett v. Waco Internatl., Inc.* (1997), 123 Ohio App.3d 1.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71199.

Decided Aug. 25, 1997.

2

*Kitch Drutchas Wager & Kenney, P.C., John S. Wasung, Susan H. Zitterman* and *Paula M. Burgess; Richard C. Krause,* for appellants.

*Reminger & Reminger, David Ross* and *Kenneth P. Abbarno,* for appellees.

---

KARPINSKI, Judge.

This appeal arises from an order of the trial court granting summary judgment in favor of a scaffolding manufacturer in this personal injury/strict products liability action by an injured worker who fell through the plywood platform of the scaffolding.

Plaintiffs-appellants Donald and Mary Ann Barrett filed this action against five entities involved in an asbestos removal project at a public high school gymnasium in Columbus, Ohio, after Donald Barrett fell through the scaffolding used in the project. Waco International, Inc. and Waco Equipment Co., d.b.a. Waco Scaffolding & Equipment ("Waco"), owned the scaffolding and, pursuant to a contract with the Columbus Board of Education, leased the scaffolding and installed it in the boys' gym.

Asbestos removal workers encountered difficulty in removing asbestos-containing material ("ACM") from a fire curtain in the gym because operation of the moveable curtain was obstructed by the scaffolding. During removal of the ACM, the fire curtain fell and struck a section of scaffolding adjacent to it. An unidentified person may have modified this section of scaffolding to facilitate access to the fire curtain, although all parties to the litigation denied making any such modification. From the scaffolding Barrett subsequently fell through a loose plywood deck, which was no longer nailed to the scaffolding beams. It is not clear whether the original condition of the scaffolding, the fire curtain striking it, and/or any modification to it caused the loose plywood.

Plaintiffs raised several claims arising out of the manufacture, installation, and maintenance of the scaffolding.[1] Plaintiffs alleged *inter alia* that Waco was strictly liable to them for (1) defectively manufacturing and designing the scaffolding, (2) failing to make adequate warnings concerning modifications to the scaffolding, and (3) providing scaffolding which did not conform to its representations. Plaintiffs also alleged that Waco was negligent and breached implied and express warranties.[2] The crux of plaintiffs' claims stemmed from Waco's use of

---

1. During the course of the litigation, plaintiffs dismissed with prejudice their remaining claims against the board of education, a project consultant, and the site manager.

2. Count IX of plaintiffs' complaint also raised a claim for punitive damages. Waco never sought summary judgment on this count. Although the trial court never expressly ruled on

four nails to attach the boards to the scaffolding when its own plans called for the use of at least sixteen nails, Waco's improper installation of I-beams to the scaffolding, and Waco's improper installation in the gymnasium of the scaffolding, which prevented the opening and closing of the fire curtain.

In a brief motion for summary judgment, Waco argued that plaintiffs failed to produce evidence to support their claims. Waco argued that someone other than Waco improperly modified the scaffolding and did not nail the plywood deck back in place. In their brief in opposition, plaintiffs argued that there was no evidence that anyone removed the plywood plank, and, regardless of whether someone had or not, Waco was nevertheless responsible under various theories. The trial court denied Waco's motion for summary judgment.

Waco thereafter filed a motion for reconsideration after deposing plaintiffs' expert witness, Charles Reynolds, a licensed professional engineer. Waco argued that Reynolds's deposition undermined the testimony in his affidavit, which incorporated his expert report. Opposing the motion for reconsideration, plaintiffs argued that the belated deposition did not undermine Reynolds's prior affidavit and also presented an affidavit from another expert witness, Lorna Middendorf, a professional safety engineer. Without opinion, the trial court thereafter granted reconsideration and summary judgment for Waco. Plaintiffs timely appeal, raising two assignments of error.

Plaintiffs' first assignment of error follows:

"The trial court clearly erred in granting Waco's motion for summary judgment where there existed genuine issues of material fact on each of the theories advanced by plaintiffs in their complaint."

This assignment is well taken in part.

Plaintiffs argue that the trial court improperly granted summary judgment on the strict liability claims in Count VII of their complaint because they presented evidence that Waco defectively manufactured and designed the scaffolding, failed to provide adequate warnings concerning modification of the scaffolding, and built scaffolding not conforming to its representations. Plaintiffs also make a one-sentence argument that Waco was liable for breach of express and implied warranties under Count VIII of their complaint.[3]

---

this claim, its judgment became final because this claim was mooted when the court granted summary judgment on all plaintiffs' underlying claims. Because we reverse summary judgment on three of these claims, as discussed *infra*, we note, without expressing any opinion concerning the merits, that plaintiffs' claim for punitive damages likewise remains unadjudicated.

3. Plaintiffs have not raised an assignment of error or made any argument concerning the trial court's grant of summary judgment on the negligence claim in Count I of their complaint. Therefore, we deem any such claim of error to be waived.

The affidavit of Reynolds, a licensed professional engineer, incorporates his expert report and lists the following "acts of omission and commission *which would have prevented this incident:*

"1. Waco Scaffolding and Equipment, and WACO International. Waco Scaffolding and Equipment is the local distributor, renter, and installer of scaffolding. WACO International is the designer and manufacturer of the scaffolding equipment used by Waco Scaffolding. They are related companies, and as such both had duties with regard to the scaffolding installed at the Columbus East High School, and from which Mr. Donald Barrett fell on July 31, 1990.

"1.1 There was inadequate nailing of the deck to the I-beam nailers. According to Mr. Kess [a Waco employee], each 4 by 8 foot sheet of plywood decking was nailed with one nail in each corner. Both OSHA and ANSI Standards were violated, since they require that fasteners be of adequate size and sufficient numbers at each connection to develope [*sic*] the designed strength of the scaffold. Waco did not meet this requirement. The piece of decking which fell with Mr. Barrett was not nailed down at the time of his fall. Waco's standard practice is to put four nails along each side of the plywood. Waco violated their own standards for nailing of the decking, which would have required 16 nails.

"1.2 The I-beams which supported the plywood decking were not adequately attached to the scaffold support tubes. This is shown by the photos taken after Mr. Barrett's fall, which show several of the I-beams not properly aligned and spaced for proper support of the decking. Had these beams been clamped or attached properly, they could not have been moved to a position which permitted inadequate support to the plywood deck from which Mr. Barrett fell.

"1.3 The entire deck and scaffold installation did not provide room for opening and closing the fire curtain without interference. Such opening and closing of the fire curtain would be required during asbestos removal, particularly the ACM's on the fire curtain itself.

"1.4 Warnings and Instructions about the scaffolding installation, stating that modifications are not permitted, and listing who to call for maintenance or modification, were not posted in the vicinity of nor on the scaffolding. Potential users of the scaffolding were not given notice of warnings and instructions. There was no method or procedure used by Waco to assure that their warnings and Instructions would be passed on to all potential users of the scaffold. The Waco Safety Guide and Safety Tips folder, which was provided in response to a document production request, contained some helpful information, which if it had been transmitted to all the users, may have prevented this incident. The Safety Tips Guide did not contain specific instructions to call Waco for any required modifications to the deck or support beams, such as providing access to the fire curtain.

"1.5 Waco did not provide periodic follow-up inspection of the scaffold, which is customary, and is recommended in their Safety Guide. Since Waco was the owner of the scaffold, and was renting it to the Columbus School Board, they should have been making periodic safety inspections. The area below the scaffold deck was not in the asbestos containment area, and was therefore readily accessible at the floor level for safety inspections.

"1.6 Waco did not have a licensed professional engineer design and seal the plans for the scaffolding installation, in accordance with the OSHA regulations. and the Ohio Registration Act." (Emphasis added.)

Waco generally emphasizes various comments made by Reynolds during his one–hundred–sixty–four–page deposition testimony to undermine his statement that these defects "would have prevented this incident." We agree that some of Reynolds's statements during his deposition can be construed to conflict with statements in his affidavit. However, when viewed in the light most favorable to plaintiffs, as we are required to on a motion for summary judgment, the evidence in this case, including any potentially conflicting testimony by Reynolds, is sufficient to support these claims. See *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123.

It should be noted at the outset that even if Reynolds's testimony can be construed to be self-contradictory, the existence of any conflicts affects the weight or credibility of his testimony and does not by itself detract from its sufficiency to raise questions of fact for the jury concerning the substantive issues. See *id.* at 341, 617 N.E.2d at 1127. Moreover, Waco's motion for summary judgment notably ignored plaintiffs' claim that the improper construction of the scaffolding interfered with the fire curtain and ignored the affidavit of Middendorf concerning the failure to warn claims.

Under the circumstances, plaintiffs presented sufficient evidence to support their claims that Waco defectively constructed and designed the scaffolding, and failed to provide adequate warnings concerning modification of the scaffolding. However, with the exception of plaintiffs' punitive damages claim, upon which Waco never sought judgment as discussed above in fn. 2, summary judgment was properly granted on their remaining claims.

### Manufacture and Design Defect

It is well established, contrary to Waco's argument on pages 11–12 in its brief on appeal, that entities who put nondefective components together to make a defective product are subject to strict liability claims as manufacturers. *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 271–272, 617

N.E.2d 1068, 1072–1073. R.C. 2307.74 governs such claims and provides in pertinent part as follows:

"A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications * * *."

The evidence is sufficient to establish that the scaffolding was defectively constructed. *Meece v. Waco Equip. Co.* (1990), 66 Ohio App.3d 64, 67, 583 N.E.2d 422, 423–424. Among other evidence, James Kess, a Waco employee, specifically admitted that the plywood, which was attached to the scaffolding by, at most, four nails, was not nailed down in accordance with Waco's own standards requiring at least sixteen nails. Plaintiffs also presented evidence that, contrary to Waco standards, the I-beams, to which the plywood was to be nailed, were not properly clamped to the scaffolding deck or posts. Finally, there is some indication that the scaffolding was not constructed with sufficient clearance to permit movement of the fire curtain consistent with plans.

As noted above, Reynolds's affidavit sufficiently stated that these and other defects were causally related to Don Barrett's injury: that is, constructing the scaffold without defect or correcting the existing listed defects "would have prevented this incident." We acknowledge that Reynolds made different statements concerning various causes at various times during his deposition.[4] However, this court must review that evidence in the light most favorable to plaintiff. Under this view, the evidence was sufficient to submit the case to the jury to decide whether these or any other construction defects for which plaintiffs produced evidence, individually or in combination, caused Barrett's injury. *Meece v. Waco Equip. Co., supra,* 66 Ohio App.3d at 67–68, 583 N.E.2d at 423–424.

Waco argues that at the time the scaffolding left Waco's hands it contained no defect to proximately cause Barrett's injury and that someone else later modified the scaffolding. It is not entirely clear from the record that any "modification" of the scaffolding ever occurred, however, because the fire curtain fell on the scaffolding in the area where Barrett fell and, therefore, was no longer in its original condition. Moreover, each party denies having made any such modification.

---

4. At one time, Reynolds stated in response to Waco's leading question that the structure of the scaffolding "prior to modification" would have protected Barrett. Waco argues that this statement completely rules out the original defective condition of the scaffolding as a cause of the incident. Waco's argument requires ignoring Reynolds's affidavit testimony. Moreover, Waco's question did not address plaintiffs' alternate contention that the fire curtain, which came in contact with the scaffold because of its original defective construction, caused the plywood—through which Barrett fell—to come loose.

In any event, even if the scaffolding were modified as Waco argues, Ohio courts have held that design defect claims may include the failure to design a product to prevent foreseeable misuse, including modifications. *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.* (1995), 107 Ohio App.3d 218, 224, 668 N.E.2d 529, 533. Although manufacturers need not guarantee that a product is incapable of causing injury, they must consider, *inter alia,* "the likelihood that the design would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product." R.C. 2307.75(B)(3). Manufacturers may be liable if the product design is "defective because the modifications were foreseeable, reasonably preventable with a feasible design, and proximately caused by the failure to use such a design." *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc., supra,* 107 Ohio App.3d at 225–226, 668 N.E.2d at 534–535.

Reynolds specifically testified that it was foreseeable that someone would modify the scaffolding because it obstructed movement of the fire curtain, which movement was necessary to complete the project. It was also foreseeable that the scaffolding would be modified and left in the condition that it was at the time Barrett fell. *Id.* at 95–96. Reynolds testified *inter alia* that there would have been no need to modify the scaffolding if it had been constructed not to interfere with the fire curtain, and that Waco was responsible for the inadequate clearance between the scaffolding and curtain even if the drawings provided to it were inadequate. *Id.* at 152–153. Reynolds's reference to these defects in Affidavit Paragraph 1.3, coupled with his statement that correcting them "would have prevented this incident," together with other evidence in the record, is sufficient to find that such defects proximately caused Barrett's injury. Contrary to Waco's argument, we find that Reynolds's statements are no more "conclusory" than Waco's denials.

Once plaintiffs produced this evidence, Waco had the burden of proving that substantial modification was the sole proximate cause of the injury. *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc., supra; Davis v. Cincinnati, Inc.* (1991), 81 Ohio App.3d 116, 610 N.E.2d 496; and *Cox v. Oliver Machinery Co.* (1987), 41 Ohio App.3d 28, 534 N.E.2d 855. Under the circumstances, when viewed in a light most favorable to plaintiffs, the evidence plaintiffs produced was sufficient to make a *prima facie* case to support their defective manufacture and design claims.

### Failure to Warn

Plaintiffs also produced evidence that Waco failed to adequately warn scaffolding users concerning modifications to the scaffolding. *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc., supra,* 107 Ohio App.3d at 226–227, 668 N.E.2d at 534–535. Reynolds testified that the warning provided by Waco in a

written safety guide was inadequate because it did not state that no modifications should be made without contacting Waco. Moreover, the warning provided was not posted by Waco at the steps to the scaffolding, and Waco did not ensure that each end-user of the scaffolding received the warning. Instead, Waco provided only one copy of the warning to one worker, Mike DeLong, and the record shows that it did not reach all the end-users, including Barrett.[5]

Reynolds testified that it was foreseeable that someone would modify the scaffolding, that such person would not know that it was essential to the structural integrity of the scaffolding to nail the plywood board back down, and that "something should be done to bring it to their attention." Although Reynolds stated at one time in his deposition that an adequate warning "might have prevented this accident," his affidavit indicated more strongly that a proper warning "would have prevented this incident."

For purposes of summary judgment, any conflict between these statements must be resolved in favor of plaintiffs. See *Turner v. Turner*, 67 Ohio St.3d 337, 617 N.E.2d 1123. We reject Waco's remaining argument that Reynolds's testimony was inadmissible because he was not sufficiently qualified. Although Reynolds never drafted a warning to be placed on any scaffolding, he testified that he was familiar with scaffolding and had provided safety warnings in other contexts. Waco's argument concerns the weight rather than the admissibility of his testimony.

Finally, we note that the affidavit of professional safety engineer Middendorf, ignored completely by Waco, also states that the scaffolding did not have "adequate safety warnings" and that this "one important safeguard would have served to avert this serious incident." Even under Waco's own theory, this testimony was sufficient, by itself, to raise a question of fact for the jury concerning the adequacy of the warning provided by Waco.

### Conformity to Representations

We find no error in the trial court's grant of summary judgment on plaintiffs' claim that Waco provided scaffolding which product the manufacturer made a material representation of fact concerning, that the product did not conform to

---

5. Waco complains that Reynolds admitted during deposition that he did not look at labels affixed to the scaffolding below the deck surface. It is not clear that these labels contain safety warnings because Waco did not produce them or refer to their content at the deposition. Moreover, the record shows that the labels were below the work surface and that workers in the asbestos containment area would not have access to them because they were separated by plastic sheeting. Under the circumstances, questions concerning whether the warnings were sufficient or properly placed on the scaffolding are questions of fact for the jury. See *Freas v. Prater Constr. Corp., Inc.* (1991), 60 Ohio St.3d 6, 10–11, 573 N.E.2d 27, 31–32.

that representation, that plaintiff justifiably relied on the representation, and that such reliance was the proximate cause of injury. *Gawloski v. Miller Brewing Co.* (1994), 96 Ohio App.3d 160, 644 N.E.2d 731.

■ Plaintiffs' claim in this case stems, in part, from Waco's alleged failure to properly clamp, in accordance with its own published safety guidelines, the I-beams supporting the plywood deck. Plaintiffs' claim also arises from an alleged representation by Waco employee Ed Justice, who participated in the inspection of the scaffolding before turning it over to Donald Barrett's employer, that the scaffolding was safe and workable. Plaintiffs contend that Donald Barrett relied on these alleged representations by virtue of the fact that he used the scaffolding. However, it is not enough simply to show that Barrett used the scaffolding to establish his reliance in fact on these "representations."

The record reveals that plaintiffs learned of and obtained these "representations" from Waco during the course of discovery in this litigation. Plaintiffs presented absolutely no evidence that Donald Barrett was aware of either representation before the incident or that he would not have used the scaffolding if these alleged representations had not in fact been made. There is no evidence that Donald Barrett saw the safety guidelines in any form or was aware of their contents, prior to the incident. Without such evidence, plaintiffs failed to produce evidence of reliance or proximate cause as a matter of law.

■ The last sentence of plaintiffs' argument concerning the failure of Waco's scaffolding to conform to its representations mentions their express and implied warranty claims. However, to the extent they sought to challenge summary judgment on these claims, plaintiffs should have raised this as a separate argument like their other claims. Even if this argument were properly raised, however, the Ohio product liability statutes preempt warranty claims concerning products which seek damages for bodily injury. See *LaPuma v. Collinwood Concrete* (1996), 75 Ohio St.3d 64, 661 N.E.2d 714.

Accordingly, plaintiffs' first assignment of error is well taken in part. The order of the trial court granting summary judgment for Waco on plaintiffs' claims for defective design and manufacturing and failure to warn are reversed and, together with their punitive damages claim, remanded for further proceedings. The order of the trial court granting summary judgment to Waco on plaintiffs' claims for providing scaffolding which did not conform to its representations, for breach of express or implied warranties, and for negligence is affirmed.

Plaintiffs' second assignment of error raises the following procedural issue:

"The trial court clearly erred in granting Waco's motion for summary judgment as the Ohio Rules of Civil Procedure do not provide for motions for reconsideration."

This assignment lacks merit.

Plaintiffs contend that the trial court improperly granted defendant's motion for reconsideration. However, the Ohio Supreme Court has recognized, contrary to this argument, that trial courts have authority to reconsider interlocutory orders prior to entering a final judgment in the case. *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 379, 21 O.O.3d 238, 239, 423 N.E.2d 1105, 1106, fn. 1. As a result, the trial court did not commit any error by granting Waco's motion for reconsideration and by reconsidering its order denying Waco's motion for summary judgment in this case. *Maxey v. Lenigar* (1984), 14 Ohio App.3d 458, 14 OBR 578, 471 N.E.2d 1388. Although the trial court did not commit any procedural error by agreeing to reconsider its original order denying summary judgment, we find for the reasons stated above that the trial court improperly granted summary judgment to defendant on plaintiffs' claims of defective design and manufacture and failure to warn.

Accordingly, plaintiffs' second assignment of error is overruled.

*Judgment accordingly.*

DAVID T. MATIA, P.J., concurs.

PRYATEL, J., concurs in judgment only.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.