OPINION
{¶ 1} Appellants, Mary K. Goodwin and Gregory E. Goodwin ("Goodwins"), appeal the March 6, 2003 judgment entry of the Common Pleas Court of Allen County granting summary judgment in favor of Appellee, Rent All Mart, Inc. ("Rent All Mart").
 {¶ 2} On July 24, 1998, Mary Goodwin, a participant in the Vandalia-Butler High School band's kick line, was injured when the scaffolding she was standing on collapsed. The Vandalia-Butler High School band was participating in a program held on the property of Bluffton College. Donald Donnett, the band director, had invited several students onto the scaffolding to watch field formations. The scaffolding suddenly collapsed while Mary Goodwin and other students were sitting and standing on the scaffolding. Mary Goodwin sustained injuries including several fractures to her lumbar spine and a broken arm.
 {¶ 3} The scaffolding in question was rented by Bluffton College in unassembled form from Rent All Mart on June 10, 1998. Rent All Mart is an Ohio corporation which rents various types of tools and equipment, including scaffolding components, to both business and individual customers. Bluffton College has rented various scaffolding components from Rent All Mart for several years by faxing a purchase order to Rent All Mart specifying the scaffolding components to be delivered. Upon receipt of the purchase order from Bluffton College, Rent All Mart would deliver the requested components and Bluffton College would assemble them.
 {¶ 4} Rent All Mart purchased their scaffolding materials from the manufacturer Bil-Jax, Inc. ("Bil-Jax"). Rent All Mart regularly received comprehensive safety packets from Bil-Jax with each piece of equipment, which detailed the proper and safe manner for erecting scaffolding. These safety packets included, among other materials, specific instructions for using base plates and/or mud sills and the reasons for their use. Base plates are flat, metal plates with a protrusion in the center that fits into the bottom of each leg of the lowest scaffolding section. Mud sills are 2x4 materials used under the base plates to provide further stability on surfaces such as mud, soft soil and gravel. Bil-Jax recommended that businesses renting scaffolding materials include safety packets with every scaffolding rental.
 {¶ 5} Mark Bourassa, Director of the Student Center at Bluffton College, used an old purchase order form to request the scaffolding components for Bluffton College on June 10, 1998. Mark Bourassa did not personally choose which components to order for Bluffton College. The purchase order from Bluffton College did not request base plates or mud sills and these materials were not delivered with the unassembled scaffolding components. Rent All Mart did not deliver a safety packet to Bluffton College with the scaffolding components. The components delivered to Bluffton College did have stickers on them which detailed assembly instructions and contained warnings. Despite the information on these stickers attached to the scaffolding components, Bluffton College assembled the scaffolding without using base plates or mud sills.
 {¶ 6} Representatives of both Rent All Mart and Bil-Jax visited the scene following the collapse of the scaffolding. The Safety Director at Bil-Jax, Steven Storrer, found that there were no base plates or mud sills attached to the scaffolding when it collapsed. Both Mr. Storrer and Mr. Rago, a scaffolding expert, opined that the reason the scaffolding collapsed was due to the lack of base plates and/or mud sills stabilizing the scaffolding. There is evidence presented in the record in which it may be inferred that erecting scaffolding without base plates or mud sills is a violation of OSHA regulations.
 {¶ 7} The collapse of the scaffolding at Bluffton College at issue in this suit is the first incident or complaint by Bluffton College that has been brought to the attention of Rent All Mart. Rent All Mart submitted that it was unaware of any prior incidents similar to the incident in the instant case. Furthermore, Rent All Mart submitted that it was completely unaware that Bluffton College had chosen to erect the scaffolding components without using base plates and mud sills and had chosen instead to pound the legs of the scaffolding frames into the ground up to the first cross member.
 {¶ 8} On August 6, 2001, a similar case involving the same incident of the collapse of the scaffolding at Bluffton College was brought before the Common Pleas Court of Allen County by Donald Donnett ("Donnett"), the Vandalia-Butler band director. Donnett sustained a fractured back and permanent spinal cord damage when the scaffolding collapsed on July 24, 1998. Donnett alleged negligence on the ground that defendant, Rent All Mart, failed to supply Bluffton College with safety instructions for the erection of the scaffolding components. The Common Pleas Court of Allen County granted Rent All Mart's motion for summary judgment.
 {¶ 9} On October 31, 2001, the Goodwins filed their own claims for negligence against Rent All Mart and other defendants involved in the action. Rent All Mart filed a motion for summary judgment and the Goodwins voluntarily dismissed the action pursuant to Civ.R. 41(A)(1)(a). After gaining additional evidence within one year of the voluntary dismissal, the Goodwins filed a second amended complaint on April 22, 2002 that claimed Rent All Mart was negligent because it knew the base plates were necessary for the safe erection of the scaffolding components but failed to include the base plates with the materials delivered to Bluffton College. The Goodwins further claimed that Rent All Mart was negligent in failing to advise Bluffton College that base plates were needed and failing to follow common practices in renting scaffolding components to non-professional renters.
 {¶ 10} Rent All Mart filed a motion for summary judgment on September 27, 2002, asserting res judicata and collateral estoppel barred the Goodwins from bringing their action against Rent All Mart. The trial court permitted the filing of the depositions taken in the Donnett case and the use of those depositions in the instant case so as to avoid duplication of time and expense to all parties. The Common Pleas Court of Allen County granted summary judgment in favor of Rent All Mart on March 5, 2003, concluding that res judicata did not apply in this case but that the incident was not foreseeable to Rent All Mart. The issues that remained between the Goodwins and the other defendants at the time the court granted summary judgment have been settled and/or dismissed as of May 27, 2003, and June 9, 2003. The Goodwins now appeal the March 5, 2003 judgment entry granting summary judgment in favor of Rent All Mart, asserting the following two assignments of error.
The trial court erred in granting Rent All Mart summaryjudgment when there was evidence that the defendant/appellee oweda duty, breached that duty, and that breach was a proximate causeof the plaintiff/appellant's injuries.
 The trial court erred in granting a summary judgment to RentAll Mart when it weighed the evidence.
 {¶ 11} We begin by addressing Rent All Mart's assertion that collateral estoppel operates as a defense on the issue of Rent All Mart's liability. Rent All Mart argues that even if summary judgment was not properly granted by the trial court, the Goodwins are barred from recovery under the doctrine of res judicata. Rent All Mart proposes that the judgment in the Donnett case precludes the Goodwins from re-litigating the issue of negligence against Rent All Mart. While Rent All Mart has failed to raise this issue in a cross appeal, as required by App.R. 3(C)(1), we elect to briefly address the issue on its merits.
 {¶ 12} The doctrine of res judicata involves both claim preclusion and issue preclusion. See Whitehead v. Gen. Tel. Co.
(1969), 20 Ohio St.2d 108, 254 N.E.2d 10, overruled on other grounds by Grava v. Parkman Twp., 73 Ohio St.3d 379,1995-Ohio-331, 653 N.E.2d 226. The doctrine of issue preclusion, also referred to as collateral estoppel, "holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." Fort Frye Teachers Assn., OEA/NEA v. State Emp.Relations Bd., 81 Ohio St.3d 392, 395, 1998-Ohio-435,692 N.E.2d 140, citing Norwood v. McDonald (1943), 142 Ohio St. 299,52 N.E.2d 67.
 {¶ 13} What constitutes privity in the context of res judicata has not been clearly defined. Brown v. Dayton,89 Ohio St.3d 245, 2000-Ohio-148, 730 N.E.2d 958. It has been clearly stated that a contractual or beneficiary relationship is not required to have privity. Id. "As a general matter, privity `is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.'" Id. at 248, citing Bruszewski v. United States (C.A. 3, 1950), 181 F.2d 419,423 (Goodrich, J., concurring). Ohio courts have held that a judgment can operate as collateral estoppel only where all of the parties to the prior proceeding in which the judgment is relied upon were bound by the judgment. Goodson v. McDonough PowerEquip., Inc. (1983), 2 Ohio St.3d 193, 443 N.E.2d 978. The operation of the rule must be mutual. Id. Therefore, if a judgment cannot be effective as res judicata against a particular person, he cannot avail himself of the adjudication and contend that it is available against others. Id.
 {¶ 14} The claims of the Goodwins are not barred by the doctrine of res judicata as proposed by Rent All Mart. The trial court correctly found that "the rights of the new plaintiff can never be barred because they have not had their day in court." March 6, 2003 Judgment Entry, p. 2. There is no privity between the Goodwins and Donnett that would serve to bar the Goodwins from bringing a claim of negligence against Rent All Mart. The Goodwins did not have a duty or right to join Donnett's case and the Goodwins' cause of action differs from that of Donnett. Therefore, it was proper for the Goodwins to bring their claim against Rent All Mart and the Goodwins' assignments of error will be reviewed accordingly.
 {¶ 15} In the first assignment of error, the Goodwins argue that a factual dispute exists as to whether Rent All Mart was negligent, which involves whether Rent All Mart had a duty to supply all necessary and essential scaffolding components to Bluffton College, whether Rent All Mart breached its duty by not providing all of the necessary and essential scaffolding components to Bluffton College, and whether Rent All Mart's failure to provide the scaffolding components was a proximate cause of Mary Goodwin's injuries. The Goodwins contend that the existence of these genuine issues of material fact should have precluded the trial court from granting summary judgment in favor of Rent All Mart.
 {¶ 16} We first note that the standard for review of a grant of summary judgment is one of de novo review. Lorain Natl. Bankv. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129,572 N.E.2d 198. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 17} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, syllabus, 526 N.E.2d 798. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 360, 1992-Ohio-95,604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be granted. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
 {¶ 18} In order to establish actionable negligence, a plaintiff must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. Fed. Steel Wire Corp. v. Ruhlin Constr. Co. (1989), 45 Ohio St.3d 171,173, 543 N.E.2d 769, citing Menifee v. Ohio Welding Products,Inc. (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. Whether a duty exists in a negligence action is a question of law for the court to determine. Mussivand v. David (1989),45 Ohio St.3d 314, 318, 544 N.E.2d 265, citing Railroad Co. v. Harvey (1907),77 Ohio St. 235, 240, 83 N.E. 66. There is no express formula for determining whether or not a duty exists. Mussivand,45 Ohio St.3d at 318. In Ohio tort law, duty refers to the relationship between the plaintiff and the defendant from which an obligation on the part of the defendant arises to exercise due care toward the plaintiff. Baltimore Ohio Southwestern Ry. Co. v. Cox
(1902), 66 Ohio St. 276, 64 N.E. 119.
 {¶ 19} The existence of a duty depends largely on the foreseeability of injury. Menifee, 15 Ohio St.3d at 77. The test for foreseeability is "whether a reasonably prudent person, under the same or similar circumstances as the defendant, should have anticipated that injury to the plaintiff or to those in like situations is the probable result of the performance or nonperformance of an act." Commerce Industry Ins. Co. v.Toledo (1989), 45 Ohio St.3d 96, 98, 543 N.E.2d 1188, citingMenifee, 15 Ohio St.3d at 77. The foreseeability of harm usually depends on the defendant's knowledge. Thompson v. OhioFuel Gas Co. (1967), 9 Ohio St.2d 116, 224 N.E.2d 131. The Ohio Supreme Court has held that the issue of foreseeability involves a factual determination by the jury when it presents "a question upon which reasonable minds might differ." Mudrich v. StandardOil Co. (1950), 153 Ohio St. 31, 40, 90 N.E.2d 859.
 {¶ 20} In determining whether a defendant should have recognized the risks involved, only those circumstances which the defendant perceived, or should have perceived, at the time of action should be considered. Englehardt v. Philipps (1939),136 Ohio St. 73, 23 N.E.2d 829. "In addition, it is generally recognized that where the defendant `in fact has knowledge, skill, or even intelligence superior to that of the ordinary person, the law will demand of that person conduct consistent with it.'" Estates of Morgan v. Fairfield Family CounselingCtr., 77 Ohio St.3d 284, 293, 1997-Ohio-194, 673 N.E.2d 1311, citing Prosser and Keeton, Law of Torts (5 Ed. 1984) 185, Section 32.
 {¶ 21} Once a duty is found to exist, the fulfillment of that duty is not defined by or limited to a particular course of action. Rather, the defendant is required to exercise the degree of care which an ordinary reasonably prudent person would exercise under the same or similar circumstances. Menifee,15 Ohio St.3d at 77.
 {¶ 22} In the case sub judice, the Goodwins argue that Rent All Mart had a duty to supply the necessary components of scaffolding to Bluffton College to allow for the safe and proper erection of the scaffolding. Therefore, under the standard set forth above for determining whether a duty exists in a negligence case, the legal issue presented in this case is whether a reasonably prudent rental company under the circumstances would have anticipated that an injury would result from failing to supply the scaffolding safety components or safety instructional manual.
 {¶ 23} Rent All Mart argues that it had no involvement in the installation of the scaffolding it delivered to Bluffton College. Rent All Mart also denies any knowledge of the manner in which Bluffton College used or assembled the scaffolding. Rent All Mart maintains that its duty was to deliver the scaffolding materials ordered by Bluffton College and that it had no duty beyond delivering the materials Bluffton College ordered. However, after reviewing the record, we find a duty on the part of Rent All Mart to provide scaffolding renters with safety instructional manuals and the safety components necessary for the proper erection of the scaffolding.
 {¶ 24} Although Rent All Mart relies on the lack of prior accidents involving the rented scaffolding components to absolve it from negligence, lack of prior accidents does not necessarily excuse Rent All Mart from its duty to provide scaffolding safety components and safety instructional manuals recommended by their supplier, Bil-Jax. See Taulbee v. Adience, Inc., BMI Div.
(1997), 120 Ohio App.3d 11, 696 N.E.2d 625. The fact that no prior incidents regarding the collapse of scaffolding at Bluffton College were reported to Rent All Mart does not mean that the incident was, therefore, unforeseeable to Rent All Mart. This is especially true when factors such as the weather and soil conditions have an effect upon the stability of erected scaffolding, making the lack of prior accidents the result of several factors working together. Storrer Depo., p. 57. Therefore, the lack of prior scaffolding collapses could have been the result of favorable weather and soil conditions, despite the danger of failing to use base plates and mud sills that was obvious to Rent All Mart.
 {¶ 25} The Ohio Supreme Court, in Witherspoon v. Haft
(1952), 157 Ohio St. 474, 106 N.E.2d 296, considered the factors of customary conduct or methods, serious danger involved and the practicability of avoiding such danger in determining negligence. The court held that:
Customary conduct or methods do not always furnish a testwhich is conclusive or controlling on the question of negligenceor fix a standard by which negligence is to be gauged, butconformity thereto is a circumstance to be weighed and consideredwith other circumstances in determining whether or not ordinarycare has been exercised. Among such other circumstances to be soweighed and considered are any serious danger involved as aconsequence of the defendant's conduct and the practicability ofsuch defendant avoiding or guarding against such danger.
Id. at paragraphs one and two of the syllabus. We have considered these factors in the case sub judice.
 {¶ 26} The evidence in the record shows that Rent All Mart was advised by Bil-Jax, the manufacturer of the scaffolding, to give safety instructional materials to renters of scaffolding components. According to the affidavit of G. Anthony Rago ("Rago"), an expert on scaffolding, Bil-Jax sends a scaffolding safety packet with every order from the Bil-Jax warehouse. Included in the packet are the OSHA scaffolding regulations, documents on scaffolding safety, instructions for erecting stationary scaffold towers (as was the type used in this case) and a four page document from the Scaffolding, Shoring Forming Institute. Bil-Jax recommended to Rent All Mart that these safety materials accompany every sale and rental of scaffolding materials. The records from Bil-Jax show that these safety materials were sent to Rent All Mart.
 {¶ 27} The evidence in the record also shows that Bluffton College did not receive these safety materials. Mark Bourassa, Director of the Student Center at Bluffton College, stated that he did not receive any materials from Rent All Mart regarding instructions for erecting scaffolding. Bourassa placed the order for the scaffolding components to be delivered by Rent All Mart to Bluffton College. Bourassa stated that he did not select which scaffolding components were to be delivered to Bluffton College, rather he used a copy of a faxed purchase order from a previous year. The purchase order submitted by Bourassa did not include a request for base plates.
 {¶ 28} However, there appears to be a customary method, at least with regard to the manufacturer, Bil-Jax, that safety instructional manuals should be given to all scaffolding renters. Rent All Mart's failure to follow this customary method falls below the standard of ordinary care. In addition, a serious danger existed as a consequence of Rent All Mart's conduct. By failing to provide a safety instructional manual and safety components for the proper erection of the scaffolding, a danger existed that the scaffolding unit would collapse and those upon the scaffolding unit would be injured. The record shows that Rent All Mart had knowledge of the importance of base plates and mud sills in the proper erection of scaffolding. Furthermore, Rent All Mart could have easily fulfilled its duty by providing Bluffton College with the safety instructional manual supplied by Bil-Jax and inquiring of Bluffton College whether base plates and mud sills should be added to the purchase order. There is no evidence in the record that Rent All Mart notified Bluffton College that base plates and/or mud sills should be ordered to ensure proper erection of the scaffolding components ordered by Bluffton College. We have not been made aware of any circumstances of impracticability in the instant matter which would justify the conclusion that Rent All Mart's conduct did not fall below the standard of ordinary care.
 {¶ 29} In addition to the safety packets, Bil-Jax placed warning stickers on the scaffolding frames that advised the use of base plates and mud sills when installing the scaffold units. Bluffton College did not heed the warnings on these stickers and instead of using base plates and mud sills, members of the crew at Bluffton College secured the scaffolding by pounding the legs of the frame into the ground up to the first cross member. While there is no evidence suggesting that Rent All Mart was aware of the procedure Bluffton College used to erect the scaffolding, it should have been foreseeable to Rent All Mart that the College would have erected the scaffolding without base plates or mud sills when none were supplied to the College. While Bil-Jax placed warning stickers on the scaffolding frames, Bil-Jax also advised that safety packets should be sent to all renters of scaffolding components as well. Thus, Rent All Mart is not necessarily absolved from its duty to provide the safety packets merely because warning stickers are placed on the scaffolding components.
 {¶ 30} Rago stated that Rent All Mart, as a regular supplier of scaffolding components, is knowledgeable about scaffolding standards and practices and is in much better position than Bluffton College to know of the hazards, risks and dangers of scaffold erection without base plates or mud sills. Bluffton College's employees, on the other hand, were untrained and not instructed by Rent All Mart as to the proper erection of scaffolding and the dangers of not using base plates.
 {¶ 31} In a case similar to the case sub judice, Barrett v.Waco Interntl., Inc. (1997), 123 Ohio App.3d 1, 8,702 N.E.2d 1216, the plaintiffs produced evidence that the manufacturer/renter failed to adequately warn scaffolding users concerning modifications to the scaffolding. The court found that the warning provided in a written safety guide was inadequate because it did not state that no modifications should be made without contacting the manufacturer, Waco. Id. at 9. The court further found that Waco did not ensure that each end-user of the scaffolding received the warning. Id. A licensed professional engineer testified in the Barrett case that "it was foreseeable that someone would modify the scaffolding, that such person would not know that it was essential to the structural integrity of the scaffolding to nail the plywood board back down, and `something should be done to bring it to their attention.'" Id. In addition, the affidavit of a professional safety engineer stated that the scaffolding did not have "adequate safety warnings" and that this "one important safeguard would have served to avert this serious incident." Id. The court ultimately found that the granting of summary judgment for the manufacturer/renter on the plaintiffs' claim for failure to warn was improper. Id. at 11.
 {¶ 32} Likewise, in the case sub judice, Rago stated that it was his opinion that Rent All Mart was negligent in renting and delivering scaffolding components without also including the safety packets supplied by Bil-Jax. According to Rago, "Rent All Mart, Inc. should not assume or presume that a user of scaffolding, particularly a college or university, would know the proper methods to use in scaffold erection, would know the proper components required to comply with OSHA, industry standards and safe scaffolding erection and use." Rago Aff., ¶ 8. Rago believed that Rent All Mart should have supplied the base plates to Bluffton College whether the College had ordered them or not because they are critical components on which scaffolding is erected. Further, Steven Storrer, product safety manager at Bil-Jax, stated that, while it would depend on several factors whether an end user was in the position to properly erect scaffolding without receiving a safety packet, he did not believe that college personnel ordinarily fell into the category of individuals who are qualified to properly erect scaffolding without a safety packet.
 {¶ 33} We hold that the evidence in the record is sufficient to create a duty on the part of Rent All Mart to provide safety components and safety instructional manuals to renters. Rent All Mart had a duty to meet the standards of reasonable care in renting scaffolding components to Bluffton College by supplying the College with the safety packet supplied by Bil-Jax or some similar material stressing the importance of proper foundation for scaffold erection, including the use of base plates and mud sills. The evidence in the record shows that it should have been foreseeable to Rent All Mart that the failure to provide base plates and mud sills or safety instructional manuals would result in the improper erection of and possible collapse of the scaffolding unit.
 {¶ 34} Having determined that Rent All Mart owed a duty to provide scaffolding safety components and a safety instructional manual to Bluffton College, we now address the second element in an action for negligence, breach of the established duty. As the Goodwins have provided evidence showing Rent All Mart failed to deliver either base plates and/or mud sills or a safety instructional manual to Bluffton College and Rent All Mart has not provided evidence to contradict this assertion, we hold that a jury may reach the conclusion that Rent All Mart breached its duty to Bluffton College.
 {¶ 35} However, in addition to showing that Rent All Mart had a duty to provide scaffolding safety components and/or a safety instruction manual and that Rent All Mart breached this duty, the Goodwins must also show that Rent All Mart's breach of this duty was the proximate cause of Mary Goodwin's injuries.
 {¶ 36} "Proximate cause" is established where an original act is wrongful or negligent and in a natural and continuous sequence the act produces a result which would not have taken place without the act. Strother v. Hutchinson (1981),67 Ohio St.2d 282, 287, 423 N.E.2d 467. To find that an injury was the natural and probable consequence of an act, it must appear that the injury might or should have been foreseen from the alleged wrongful or negligent act. Jeffers v. Olexo (1989),43 Ohio St.3d 140, 143, 539 N.E.2d 614.
 {¶ 37} It is well established in tort law that an injury may have more than one proximate cause. Murphy v. Carrolton Manuf.Co. (1991), 61 Ohio St.3d 585, 575 N.E.2d 828, citing Prosser and Keeton, Law of Torts (5 Ed. 1984) 266-268, Section 41. "The fact that some other cause concurred with the negligence of a defendant in producing an injury does not relieve him from liability, unless it is shown such other cause would have produced the injury independently of defendant's negligence."City of Piqua v. Morris (1918), 98 Ohio St. 42, paragraph one of syllabus, 120 N.E. 300. The Goodwins provided sufficient evidence to show that Rent All Mart was a proximate cause of Mary Goodwin's injuries.
 {¶ 38} Three scaffolding towers were erected by Bluffton College's summer conference crew. The lead members of the crew learned how to erect the scaffolding by participating with other crew members. In 1998, the year in which the scaffolding at Bluffton College collapsed, there were no instructional manuals or assistance provided by Rent All Mart pertaining to the proper manner in which to erect the scaffolding. The record shows that no instructional manuals or assistance was provided by Rent All Mart the previous two summers as well. In fact, the lead crew member, Mr. Gallant, showed no knowledge of base plates or mud sills and was not provided instructions or OSHA guidelines on scaffolding assembly.
 {¶ 39} Representatives of Rent All Mart and Bil-Jax visited the scene of the accident shortly after the collapse of the scaffolding. Storrer, product safety manager at Bill-Jax, stated that the accident scene supported, in his opinion, the fact that "one of the legs of the scaffolding, sunk into the ground sufficient to allow the scaffolding to tip over." Storrer Depo., p. 58. Storrer also stated that it appeared there were no base plates or mud sills on the scaffolding which precipitated the accident to occur.
 {¶ 40} Rago, a scaffolding expert, stated that, in his opinion, "the cause of the collapse of the scaffold tower was the absence of suitable bases which should have been base plates and mud sills which were required by OSHA, by industry standards and by sound and safe scaffolding installation and use practice." Rago Aff., ¶ 7. Rago further stated that the use of base plates or mud sills would have prevented the collapse of the scaffolding in this case and that "the possibility or even probability of tipping is certainly foreseeable without the use of proper foundation." Rago Aff., ¶ 13. Rago came to this conclusion through his review of the evidence and he believed that "[i]f, as testified to by witnesses, the scaffold legs were merely on the surface of the ground the open ends of the scaffold's tubular legs would easily and probably randomly partially sink into the ground and cause instability and toppling of the scaffolding." Rago Aff., ¶ 7.
 {¶ 41} We, therefore, hold that the Goodwins have also presented sufficient evidence to show that there exists a genuine issue as to whether the breach of duty by Rent All Mart to supply scaffolding safety components and a safety instructional packet was the proximate cause of Mary Goodwin's injuries. Having found that genuine issues of material fact exist in this case, the Goodwins' first assignment of error is sustained.
 {¶ 42} The Goodwins' second assignment of error asserting that the trial court erred by weighing the evidence in its determination to grant summary judgment to Rent All Mart is rendered moot by our determination in the first assignment of error. Accordingly, the second assignment of error is overruled.
 {¶ 43} Based on the foregoing, the judgment of the Court of Common Pleas of Allen County is reversed and remanded for proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Knepper, J., concurs.
(Knepper, J., of the Sixth Appellate District, sitting by assignment in the Third Appellate District.)
Shaw, P.J., dissents.