OPINION {¶ 1} The defendant/third-party plaintiff/appellant, Paul W. Ludwig ("Ludwig"), appeals the judgment of the Hancock County Common Pleas Court dismissing his third-party complaint.
 {¶ 2} In June 2000, the third-party defendant/appellee, Village of Mt. Cory ("Village"), filed criminal charges in Findlay Municipal Court against Ludwig for his violation of Village Ordinance 1991-4, section 660.042. The Village alleged that Ludwig "did unlawfully allow to remain on [his property] within the corporate limits of [the Village], certain materials of an unsightly and unsanitary nature." (Trial Tr., Jul. 10, 2006, at Pl.'s Ex. 7). Specifically, the Village alleged that Ludwig was storing junk vehicles. (Trial Tr., at 12).
 {¶ 3} We do not have the complete record from the municipal court, but at some point, the court determined that a nuisance existed and ordered Ludwig to abate it within seven days. On June 12, 2001, the Village filed a motion for imposition of sentence, alleging that Ludwig had failed to abate the nuisance. The motion requested permission for the Village "to enter the property and abate [the] nuisance at no cost to [Ludwig]." (Trial Tr., at Pl.'s Ex. 6). The municipal court filed a supplemental disposition entry on July 5, 2001, which ordered the Village's agent to clean up the property if Ludwig failed to do so by July 13, 2001. (Trial Tr., at Def.'s Ex. A). Ludwig failed to clean up the property, so the Village undertook the task.
 {¶ 4} For the removal of junk cars, the Village contracted with Northwestern Ohio Aluminum ("NOA"), who agreed to donate its services in exchange for the salvage value of the vehicles, thus effecting the removal without cost to Ludwig. However, during the clean-up, additional materials were found on the property, escalating the clean-up into a larger job than anticipated. The Village contracted with GRL Excavating ("GRL") to clean up the other materials on Ludwig's property, and it negotiated a second contract with NOA to haul those additional materials off the property. The Village entered into the second contract because NOA had greater hauling capacity than GRL, which would result in fewer loads to the disposal area. GRL submitted a bill for $6,657.35 to the Village, and for hauling the additional materials, NOA submitted a bill of $6,750.
 {¶ 5} Pursuant to R.C. 731.54, the Village enacted Ordinance 2001-6 on August 13, 2001, which stated that the Village had incurred expenses of $13,511.42 in cleaning up Ludwig's property and "[t]hat the County Auditor is hereby authorized and is here requested to enter upon the tax duplicate * * * a lien to be collected as other taxes and returned to [the Village] with the general fund." (Trial Tr., at Pl.'s Ex. 1). On August 27, 2001, the Village certified the clean-up expenses to the Hancock County Auditor, who placed the assessment on Ludwig's tax duplicate. (Trial Tr., at Pl.'s Ex. 2).
 {¶ 6} Subsequently, a dispute arose between Ludwig and the Village as to the assessment to Ludwig of the $6,750 billed by NOA. Ludwig claimed the Village had violated its agreement and the municipal court order filed on July 5, 2001 to clean up the property at no cost to him. The Village and Ludwig resorted to the municipal court for clarification of the agreement evidenced by the order of July 5, 2001. We note that the July 5, 2001 judgment entry did not contain any language as to who would bear the cost of clean-up.
 {¶ 7} In a second supplemental disposition entry filed on September 22, 2003, the municipal court, attempting to clarify or interpret the parties agreement, found that as of July 5, 2001, the date of the first supplemental disposition entry, the parties would have been unable to reach an agreement as to the allocation of the additional clean-up costs because the expenses charged by NOA were incurred after the entry was filed and after the original clean-up began. (Trial Tr., at Pl.'s Ex. 3). In the second supplemental disposition entry, filed on September 23, 2002, the municipal court ordered Ludwig to "bear the costs of clean-up actually incurred by the Village * * * and its agents, subcontractors and assigns excepting those charges, if any, assessed by [NOA] which charges shall be the sole responsibility of the Village". (Trial Tr., at Pl.'s Ex. 3).
 {¶ 8} On February 15, 2005, the plaintiff/appellee, J. Steve Welton, Hancock County Treasurer ("Treasurer"), filed a complaint for foreclosure in Hancock County Common Pleas Court. The Treasurer sought foreclosure because Ludwig owed outstanding taxes, special assessments, and penalties exceeding $20,000. On March 16, 2005, Ludwig filed his answer and a third-party complaint, naming the Village as the third-party defendant. Ludwig alleged that the enactment of Ordinance 2001-6 violated the supplemental disposition entry filed in Municipal Court on September 23, 2002. Ludwig requested release of the assessment, or in the alternative, indemnity in the amount of the special assessment if judgment were ordered in favor of the Treasurer.
 {¶ 9} On January 13, 2006, the trial court began a bench trial on the thirdparty complaint. However, trial was continued because the parties entered into settlement negotiations. Unable to reach an agreement, the parties again proceeded to bench trial on March 17, 2006. The court heard testimony from one witness and admitted eight exhibits into evidence. At the close of evidence, the trial court permitted the parties to file additional authority. Ludwig filed a post trial brief in which he argued the Village was estopped from using the foreclosure action as a means of recovery because it previously chose to pursue the matter in Municipal Court. Therefore, Ludwig requested the trial court order the Village "to reduce the tax lien placed upon [his] real estate tax duplicate in the amount of" $6,750.
 {¶ 10} In its judgment entry, the trial court found that:
 [t]he parties had not reached a full and complete agreement as to the scope of all work to be performed by NOA. As such, the Court does not accept Ludwig's argument that the orders from Findlay Municipal Court estop the Village from seeking recovery for other costs associated with the clean up of the Ludwig property. Those documents do not clearly spell out the entire understanding of the parties nor did they bind the Village from contracting with NOA for separate, but related clean-up expenses.
J. Entry, May 1, 2006, at 5. Therefore, the court held that collateral estoppel was inapplicable. The court also dismissed the third-party complaint, finding that Ludwig had failed to carry the burden of proof. Ludwig appeals the trial court's judgment and asserts the following assignment of error:
 The trial court erred and abused its discretion in its ruling herein when it determined the Village of Mt. Cory/third party defendant-appellee was not barred by the doctrine of res judicata/collateral estoppel by the orders of the Findlay Municipal Court from the Village seeking recovery in the case at bar for the costs associated with the clean up of the defendant/third-party plaintiff-appellant's property.
 {¶ 11} Initially, we were concerned that the trial court's judgment was interlocutory, as the foreclosure action remains pending. Appellate jurisdiction is limited to review of lower courts' final judgments. Section 3(B)(2), Article IV of the Ohio Constitution. To be a final, appealable order, a judgment entry must meet the requirements of R.C.2505.02 and, if applicable, Civ.R. 54(B). Chef Italiano Corp.v. KentState Univ. (1989), 44 Ohio St.3d 86, 88, 541 N.E.2d 64. R.C. 2505.02
provides that a final appealable order is "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment."
 {¶ 12} In his third-party complaint, Ludwig requested release from the assessment, or in the alternative, indemnification. At the close of evidence, the court allowed the parties to file additional authority on the issue of collateral estoppel. Apparently, the Village intended to plead collateral estoppel, but chose not to pursue the issue. However, Ludwig filed a post-trial brief, affirmatively using the doctrine of collateral estoppel to argue that the Village could not seek payment on the assessment through the foreclosure action because the matter had been fully litigated in Municipal Court.
 {¶ 13} The trial court's order finding collateral estoppel inapplicable would not be final and appealable because such order would not prevent a judgment in the third-party action. However, judgment in the action was prevented when the court dismissed the third-party complaint based on Ludwig's failure to meet the burden of proof. Since the trial court included the Civ.R. 54(B) language, we may review the judgment as final and appealable. See State ex rel. Jacobs v. Municipal Court of FranklinCounty (1972), 30 Ohio St.2d 239, 284 N.E.2d 584, at syllabus ("An order of a trial judge allowing or dismissing a third-party complaint is not a final appealable order unless there is an express determination that there is no just reason for delay. In that event, the judgment is reviewable upon the determination of no reason for delay, as well as for the error in allowing or dismissing the * * * third-party complaint").
 {¶ 14} The doctrine of res judicata includes both claim preclusion (res judicata or estoppel by judgment) and issue preclusion (collateral estoppel). Grava v. Parkman, 73 Ohio St. 3d 379, 380, 1995-Ohio-331,653 N.E.2d 226.
 The doctrine of issue preclusion, also referred to as collateral estoppel, "holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different."
(Emphasis added). Goodwin v. Bluffton College, 3rd Dist. No. 1-03-37, 2004-Ohio-2223, at ¶ 12 (quoting Fort Frye Teachers Assn.,OEA/NEA v. State Emp. Relations Bd., 81 Ohio St.3d 392, 395,1998-Ohio-435, 692 N.E.2d 140 (citing Norwood v. McDonald (1943),142 Ohio St. 299, 52 N.E.2d 67)). Whether the doctrine of res judicata is applicable is a question of law, subject to de novo review. Althof v.State Board of Psychology, 4th Dist. No. 04CA16, 2006-Ohio502, at ¶ 13 (citing Rehawangi v. Alsamman, 8th
Dist. No. 83643, 2004-Ohio4083).
 {¶ 15} Without determining whether Ludwig's affirmative use of collateral estoppel was properly raised for the first time at the close of evidence and through a post-trial brief, we agree with the trial court that the underlying issue was not fully litigated in Municipal Court, barring Ludwig's use of the doctrine. However, we reach our conclusion for different reasons.
 {¶ 16} When the Village instituted criminal proceedings against Ludwig in Municipal Court, it was operating under Ordinance 1991-4. At trial, Ron Gillogly, the Village's former mayor, testified that the criminal complaint was filed because the Village wanted junk cars removed from Ludwig's property. Village Ordinance 1991-4, section 660.043 provides for the Village's prohibition against the storage of junk vehicles. However, Ludwig was charged under section 660.042, which prohibits the storage of "any offensive material or materials of an unsightly and unsanitary nature." The ordinance also provides the penalties to be imposed if a landowner is found to have violated either section. Specifically, section 660.0411 provides that an offender can be convicted of a fourth degree misdemeanor; it provides for a fine; and it states:
 [i]n all cases, wherein, a person has been convicted of or has pleaded guilty to a violation of Section 660.041 through 660.0410 of the Mt. Cory Codified Ordinances, the Court shall, in addition to any fine or sentence imposed upon the offender, order the nuisance abated within 7 days.
(Trial Tr., at Pl.'s Ex. 5).
 {¶ 17} Municipal courts are statutorily created and have limited subject matter jurisdiction in civil and criminal cases. R.C. 1901.01;1901.18; 1901.20. In criminal cases, municipal courts must follow the Rules of Criminal Procedure; however, "the power of the court in relation to the prosecution is the same as the power that is conferred upon county courts." R.C. 1901.21(A). While a municipal court has jurisdiction to impose fines and assess court costs in criminal cases, it may not enter judgment as to other financial obligations, such as the allocation of the cost to abate a nuisance. See generally Greenfield v.Jolly (4th Dist. Jun. 29, 1984) No. 512, unreported (county court subject-matter jurisdiction limited in criminal proceedings). The Fifth District Court of Appeals has also distinguished a court's jurisdictional limitations in civil and criminal matters.
 Judicial power of necessity can be exercised within the scope of jurisdiction, and not beyond it, and comparison of judicial power as exercised within the scope of statutory jurisdiction in criminal cases with that exercised in civil cases will fairly illustrate the distinction sought here to be made. It will show how such power in civil matters is exercised according to the course of common law; whereas, in criminal cases , it is to be exercised without regard to the common law, but strictly in accord with the provisions of the statutes. Having no judicial power in the latter class of cases, except as derived from statutes, courts cannot exercise any power derived from any other source . Common-law crimes and procedure have been abrogated, which takes away all judicial power heretofore existing by common law not now specially provided for by statute. Judicial power in civil cases is largely dependent upon the common law, while in criminal cases it is not governed by the common law at all.
(Emphasis added). Ex parte Steinmetz (1930), 35 Ohio App. 491, 496, 172 N.E. 623.
 {¶ 18} If a court lacks subject-matter jurisdiction, its judgment will be void ab initio. Greater Temple Christian Church v. Higgins, 9th Dist. No. 23022, 2006-Ohio-3284, at ¶ 16 (quotingFreeland v. Pfeiffer (1993), 87 Ohio App.3d 55, 58, 621 N.E.2d 857
(citing Patton v. Diemer (1988), 35 Ohio St.3d 68, 70, 518 N.E.2d 941;State ex rel. Lawrence Dev. Co. v. Weir (1983), 11 Ohio App. 3d 96, 97,463 N.E.2d 398)). "`Further, subject matter jurisdiction may not be conferred upon a court by agreement of the parties, nor may lack of subject matter jurisdiction be waived. * * * Lack of subject matter jurisdiction may also be the basis for mandatory sua sponte dismissal by the courts.'" Id. In this case, the municipal court's supplemental judgment entry, filed on September 23, 2002, is void ab initio because the court's subject-matter jurisdiction in the criminal proceedings did not extend to resolution of the parties' contractual issues relating to the allocation between them of clean-up costs.
 {¶ 19} Because we do not have the full record before us, we decline to determine when the municipal court was divested of jurisdiction. Without the record, we are unaware whether Ludwig was sentenced to pay a fine or was subject to some other penalty. We do know that the municipal court ordered Ludwig to abate the nuisance prior to July 5, 2001 and reordered abatement on July 5, 2001. The Village cleaned up the property after July 13, 2001.
 {¶ 20} Essentially, the judgment entry filed on September 23, 2002 is the municipal court's interpretation of a contract dispute as to which party should bear the cost of clean-up. This entry was filed after the Village exercised its statutory right to certify the cost of clean-up to the Hancock County Auditor and after the auditor had placed the lien on Ludwig's tax duplicate. While we believe the municipal court had good intentions in filing the September 23, 2002 judgment entry, its jurisdiction of the matter had been divested at some time prior. Since the municipal court did not have jurisdiction to allocate the cost of clean-up, the issue was not fully litigated before a court of competent jurisdiction prior to the proceedings in Common Pleas Court. Although it did so for different reasons, the trial court did not err in finding the doctrine of collateral estoppel inapplicable.
 {¶ 21} At best, the September 23, 2002 judgment entry served as some evidence of the parties' agreement. The trial court apparently placed little weight, if any, on the purported agreement in determining that Ludwig had failed to meet the burden of proof in prosecuting his third-party complaint. On this record, we would be unable to hold that the trial court abused its discretion in so doing because the trial court is in the better position to assess witness credibility and weigh the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus. The sole assignment of error is overruled.
 {¶ 22} The judgment of the Hancock County Common Pleas Court is affirmed.
Judgment affirmed.
SHAW and CUPP, JJ., concur.